Gretchen Mandekor
Gretchen@rosenbaumlawgroup.com
Rosenbaum Law Group, PC
1826 NE Broadway
Portland OR  97232-1430
Telephone: 503.288.8000 x. 111
Facsimile: 503.288.8046

Timothy W. Grabe, OSB# 830423
timgrabe@icloud.com
Timothy W. Grabe
65 SW Yamhill Street, Ste. 300
Portland, Oregon 97204-3316
Telephone: 503.223.0022
Facsimile: 503.420.8605

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# [PORTLAND DIVISION]

| | |
|---|---|
| **CLINTON O. MARSHALL,**<br><br>                       **PLAINTIFF,**<br><br>v.<br><br><br><br><br><br>**WELLS FARGO RAIL CORPORATION; ACF INDUSTRIES, LLC; WYOMING COLORADO RAILROAD, INC. dba OREGON EASTERN RAILROAD; AMERICAN RAILCAR LEASING LLC, SMBC RAILCAR SERVICES, LLC and BNSF RAIL COMPANY,**<br><br>                                    **DEFENDANTS** | Case No.:  3:20-cv-01899<br><br>**COMPLAINT**<br>**Personal Injury Claims for violations of Oregon Safe Employment Act, Employer Liability Law, Common Law Negligence, and Product Liability**<br><br>**(28 U.S.C. § 1332)**<br><br>**DEMAND FOR JURY TRIAL** |

        Plaintiff alleges that:

COMPLAINT                                              1

## PARTIES, JURISDICTION, VENUE

1.

At all material times Clinton Marshall was a resident of Idaho and was employed as a worker at an industrial minerals factory, EP Minerals, LLC, in Vale, Oregon, that processed diatomaceous earth.

2.

Jurisdiction of this action in founded on diversity of citizenship pursuant to 28 U.S. § 1332 because plaintiff and defendants at material times were citizens of different states and the matter in controversy exceeds $75,000. Venue is appropriate in this court because a substantial part of the events giving rise to this claim arose in this District.

3.

At all material times defendant Wells Fargo Rail Corporation (hereafter Wells Fargo) was a North Carolina corporation which conducted business in Oregon.

4.

At all material times defendant ACF Industries, LLC was a Delaware corporation based in Missouri. In 1994, in Pennsylvania, it manufactured a railcar identified as ACFX 458737, serial number BHC SHPX 43409 which was placed in a national stream of commerce, and which railcar was foreseeably used numerous times in Oregon for transport of diatomaceous earth to other destinations across the United States.

5.

At all material times defendant Wyoming Colorado Railroad, Inc. was a Utah corporation doing business as Oregon Eastern Railroad (hereafter OERR). OERR conducted railway business in Oregon, and had its headquarters in Vale, Oregon.

6.

At all material times defendant American Railcar Leasing, LLC (hereafter Defendant ARL) was a Delaware corporation which conducted business in Oregon.

7.

Defendant SMBC Railcar Services, LLC, (hereafter Defendant SMBC) a Delaware corporation based and a Chicago-based railcar lessor which acquired American Railcar Leasing, LLC. SMBC Railcar Services, LLC is a sub-entity of SMBC Group, which in turn is a sub-entity of a holding company entitled Sumitomo Mitsui Financial Group, Inc.

8.

At all material times defendant BNSF Railway Company was a Delaware corporation which conducted business in Oregon, and which had its Oregon headquarters in Portland, Multnomah County, Oregon.

**FACTS**

9.

On February 18, 2019, plaintiff was working his shift at the EP Minerals factory in Vale, Oregon, atop the railcar identified as ACFX 458737, serial number BHC SHPX 43409. He was using a pneumatic pressure hose to fill the car with diatomaceous earth, and a hose called a vent line to remove dust and air from the railcar interior. When plaintiff tried to detach the vent line, it blew off under dangerous pressure and the vent line cap bashed his head. He fell off the railcar and was caught by his fall protection gear. The railcar lacked a readable pressure gauge

COMPLAINT                                    3

atop the railcar that plaintiff could use to guard against the risk of removing the hoses while the railcar was over-pressurized; it lacked a hose safety restraint such as a whip check cable connecting the vent and fill lines to the hatch so that if dangerous pressure caused the lines to blow off, they would not kill or maim the worker; and it lacked adequate warnings about dangers of an over-pressurized railcar. Because the railcar's hose connection could cause a hazardous condition, reasonable safety for the worker meant the railcar should have had a hose safety restraint, as evidenced by safety standards for analogous industrial uses such as 29 Code of Federal Regulations (CFR) 1926.603(a)(10) which requires safety chains or the equivalent, for hose connections to prevent the lines from thrashing around in case the coupling becomes disconnected; 29 CFR 1926.302(b)(1) and (b)(7) which require such restraints for hoses conveying pressurized fluids and gases; and U.S. Army Corps of Engineers regulation 13.G.02 which provides that connections and nozzles shall be designed to prevent accidental disengagements and all connections shall be equipped with safety lashings, and regulation 20.A.17 which states that connections with high pressure hoses must be secured with a safety lashing/whip check.

10.

Plaintiff's injuries caused by the vent line cap bashing his head include multiple facial and orbital fractures including LeFort fracture with entrapment of his right eye, nasal and sinus fractures, bilateral optic nerve sheath hematoma, diplopia, traumatic brain injury, concussion, headache, tinnitus, hyperacusis, hearing loss, memory loss, vertigo and gait disturbance, weight gain, diminished ability to smell and taste, light sensitivity, injury from the low back to the shoulders, sleeplessness, acute and chronic pain, and psychological injury including depression and post-traumatic stress disorder. He has undergone numerous facial and eye surgeries, for

which he has obtained medical and orthodontia treatment, physical therapy, and mental health treatment. He has most recently undergone another reconstructive eye surgery in November, 2020 at the Casey Eye Institute at the Oregon Health Sciences University campus in Portland, Oregon.

11.

Plaintiff's damages caused by the injuries are:

a. Medical costs in the approximate sum of $420,000 to date. Medical treatment is continuing, and this sum will be revised upwards.

b. A minimum life care plan in a sum that will be alleged in an Amended Complaint.

c. Lost wages and loss of earning capacity in a sum that will be alleged in an Amended Complaint.

d. Noneconomic damages in the sum of $5,000,000.

**FIRST CLAIM FOR RELIEF**
**(Oregon Safe Employment Act Claim against Wells Fargo Rail Corporation)**

12.

Plaintiff realleges paragraphs 1 - 11.

13.

The railcar was a moveable place of employment as defined in Oregon Revised Statute 654.005(8). Defendant Wells Fargo, as the owner of the railcar as defined by ORS 654.005(6), had a duty pursuant to ORS 654.015 to maintain a safe and healthy workplace.

14.

COMPLAINT                                    5

Wells Fargo violated ORS 654.015 by failing to maintain a safe moveable workplace, in one or more of the following ways:

a. The top of the railcar where workers labored to fill the railcar with diatomaceous earth, using air pressure through a pneumatic fill hose and a vent line, lacked four elements of an adequate warning, namely: (1) the warning should contain a signal word to indicate the presence of a hazard and convey the severity of the hazard, (2) the warning should explicitly identify the hazard, which in this case was an explosive release of pressurized air, (3) the warning should express what could happen, which in this case is major injury or death, and (4) the warning should contain an actionable directive on how to avoid the hazard, which in this case would be a directive not to remove a hose until the railcar was de-pressurized.

b. Its railcar lacked an adequate pressure gauge on top of the railcar which a worker such as Clinton Marshall, while working on top of the railcar, could readily understand and use to protect himself. Such a gauge would have the purpose of warning the worker if the railcar's interior was dangerously pressurized, and the worker would thereby know that he or she should not fill the railcar or remove the vent or fill lines before de-pressurizing the railcar.

c. Its railcar lacked a hose safety restraint such as a whip check cable or other restraint that would connect the railcar hatch to the pneumatic vent line and fill line. This device would have the purpose of preventing the vent line and fill line from blowing off the railcar hatch with dangerous, explosive force and injuring or killing the worker if the vent or fill lines were detached when the railcar was over- pressurized. Such a hose restraint was the practicable precaution to use for the protection of workers,

similar to the manner in which such restraints are required for pressure hoses used in pile-driving and other industrial hose connections as prescribed by standards including 29 CFR 1926.603(a)(10), 29 CFR 1926.302(b)(1) and (7), and US Army Corps of Engineers regulations 13.G.02 and 20.A.17.

15.

Wells Fargo's violation of ORS 654.015 caused plaintiff's injuries.

### SECOND CLAIM FOR RELIEF
**(Employer Liability Claim against Wells Fargo, OERR, BNSF, ARL and SMBC)**

16.

Plaintiff realleges paragraphs 1 – 11 and 14.

17.

Pursuant to Oregon's Employer Liability Law, ORS 654.305, persons having charge of, or responsibility for, any work involving a risk or danger to employees or the public shall use every device, care and precaution that is practicable to use for the protection of life and limb, limited only by the necessity for preserving the efficiency of machinery, and without regard to cost.

18.

Defendants Wells Fargo, BNSF, OERR, ARL and SMBC were engaged in a common enterprise with plaintiff's direct employer, EP Minerals, LLC. They participated in a project of which the defendants' operations were integral or component parts, namely,

    a.    BNSF transported a railcar to Oregon and then transferred it to OERR, which transported it to the EP Minerals' factory in Vale, Oregon, when it knew or should have known that the railcar was negligently designed due to a failure to have adequate pressure

gauges on top that would protect workers laboring on top of the railcar, the railcar lacked a hose restraint such as a whip check cable attaching the vent and fill hoses to the railcar as alleged in paragraph 14, and the railcar lacked adequate warnings of foreseeable dangers to workers if the vent or hose blew off due to dangerous pressure within the railcar. BNSF had the opportunity, and the duty, to inspect the railcar for such dangerous defects before delivering it to OERR, and to take steps for the protection of persons who could foreseeably be injured, such as warning them.

b.    OERR transported the railcar to the EP Minerals factory in Vale, Oregon, when it knew or should have known of the facts alleged in subparagraph (a) above. OERR had the opportunity, and the duty, to inspect the railcar for such dangerous defects before delivering it to EP Minerals, where the railcar would foreseeably be filled with diatomaceous earth. OERR additionally did inspection and maintenance work on railcars before delivering them to EP Minerals, including welding and checking for dangers to workers, and OERR thereby had the opportunity and duty to ascertain that the railcar contained dangerous defects as alleged above, and to take appropriate remedial steps such as warning EP Minerals' workers of the dangers.

c.    Wells Fargo owned the railcar. It knew or should have known of the facts alleged in subparagraph (a) above. Wells Fargo had the opportunity, and the duty, to correct the defects regarding the lack of gauges on top of the railcar, and the lack of hose restraints such as whip check cables connecting the vent and fill lines to Wells Fargo's railcar, and by warning EP Minerals and plaintiff in a manner alleged in subparagraph (a) above.

d.    ARL and the company that acquired it, SMBC, were lessors of the railcar in February, 2019. At that time EP Minerals was the lessee. ARL and SMBC knew or

COMPLAINT                                      8

should have known of the defects, as alleged in paragraph 14, and they had a duty to either correct the foreseeably dangerous defects or warn EP Minerals and its employees of the danger.

19.

The common enterprise project consisted of defendants Wells Fargo, OERR, BNSF, ARL and SMBC providing a railcar to EP Minerals, which EP Minerals' workers would fill with diatomaceous earth, and which would be transported by OERR and BNSF to buyers in other states for use in manufacturing various products. Defendants Wells Fargo, OERR, BNSF, ARL and SMBC participated in this enterprise in order to profit monetarily along with EP Minerals from the conduct of persons such as plaintiff performing foreseeably dangerous and risky labor on top of the railcar. The enterprise of providing and filling railcars with diatomaceous earth, inspecting and maintaining railcars, transporting railcars in and out of the EP Minerals factory, and getting the diatomaceous earth to buyers, was conducted through contracts, leases, customs, cooperation between the companies, emails and other communications and arrangements, all of which were designed to allow the participants to maximize their profits from the use of the railcar and the intermingled worker such as plaintiff with the minimum amount of costs.

20.

The work involved risk or danger to EP Minerals' employees in that, in order to fill the railcar with diatomaceous earth, an EP Minerals worker was required to work atop the railcar and use pneumatic hoses with air pressure that forced the product into the railcar. This work could foreseeably, without the worker's knowledge, over-pressurize the railcar, resulting in a worker being injured or killed if the worker was unaware of the high pressure which could explode forth

COMPLAINT                                9

in a manner that would cause injury or death if the worker tried to remove the fill line or vent line.

21.

Plaintiff was an intermingled employee of defendants Wells Fargo, OERR, BNSF, ARL and SMBC in that the enterprise required coordinated work by the defendants and EP Minerals in order to arrange for the railcar to be leased, transported to the EP Minerals factory, inspected for safety defects, maintained, filled with diatomaceous earth, and transported to a buyer at the end destination, whereupon the cycle would repeat itself. The process was dependent on intermingled workers of the participating companies working in a coordinated manner.

22.

Defendants Wells Fargo, OERR, BNSF, ARL and SMBC had charge of, or responsibility for, the instrumentality that caused plaintiff's injury, to wit:

    a.    Wells Fargo owned the railcar and failed to make it safe for users such as plaintiff by: (1) installing a hose restraint such as a whip check cable connecting the vent line to the railcar; (2) it failed to install adequate pressure gauges that would alert workers atop the railcar of dangerous pressure within the railcar; and (3) Wells Fargo failed to adequately warn users of such dangers arising from the railcar becoming over-pressurized.

    b.    Despite knowing that persons such as plaintiff would use pressure pneumatic hoses to fill the railcar with diatomaceous earth, both OERR and BNSF failed to alert persons of the dangers alleged in subparagraph (a), and paragraphs 14 and 20 above.

    c.    ARL and SMBC leased the railcar to EP Minerals for use in February 2019 when it was in a condition in which they knew, or should have known, that the railcar was

COMPLAINT                                    10

unreasonably dangerous to workers because it lacked an adequate gauge on top of the railcar, it lacked a hose safety restraint such as a whip check cable attaching the vent line and the fill line to the railcar, and it lacked adequate warnings as alleged in paragraph 14.

### THIRD CLAIM FOR RELIEF
**(Common Law Negligence of Wells Fargo, OERR, BNSF, ARL and SMBC)**

23.

Plaintiff realleges paragraphs 1 – 14.

24.

Defendants Wells Fargo, OERR, BNSF, ARL and SMBC knew, or in the exercise of reasonable care should have known that employees of EP Minerals such as plaintiff would foreseeably use pneumatic hoses with air pressure to fill the railcar with diatomaceous earth, and that the use of such devices would create a danger of injury or death to workers if the worker could not adequately detect and release air inside an over-pressurized railcar. Defendants had a duty to employees of EP Minerals including plaintiff to provide a railcar that was reasonably safe for its intended use, or to warn of dangers.

25.

Defendants were negligent and breached their duties of due care to a foreseeable plaintiff by:

a. Failing to provide an adequate gauge that plaintiff could read while working atop the railcar, which would have allowed him to detect the fact that the railcar was dangerously over-pressurized and that he should safely release air pressure before removing the pneumatic hoses from the top of the railcar.

b.  Failing to provide a hose safety restraint such as a whip check cable, or other safety device, that would keep the pneumatic hoses from blowing off and injuring or killing a worker who tried to remove a pneumatic hose.

c.  Failing to adequately warn plaintiff of the reasonably foreseeable dangers of working atop a railcar which lacked the safety systems alleged in subparagraphs (a) and (b) above.

26.

Defendants' conduct described above caused a foreseeable risk of harm, the risk was to an interest of a kind that the law protects against negligent invasion, Defendants' conduct was unreasonable in light of the risk, Defendants' conduct was a cause of Plaintiff's harm, and Plaintiff was within the class of persons and his injury was within the general type of potential incidents and injuries that made Defendants' conduct negligent.

## FOURTH CLAIM FOR RELIEF
**(Product Liability Claim against ACF Industries)**

27.

Plaintiff realleges paragraphs 1 – 11.

28.

The railcar was manufactured by defendant ACF Industries in 1994 in Pennsylvania, and was foreseeably used in Oregon multiple times between 1994 and 2019.  Plaintiff's claim has been timely filed within two years of his injury. Pennsylvania does not have an applicable statute of ultimate repose for claims involving negligent design of the railcar, and therefore plaintiff's claim against ACF is timely filed.

29.

Defendant's conduct described above caused a foreseeable risk of harm, the risk was to an interest of a kind that the law protects against negligent invasion, Defendant's conduct was unreasonable in light of the risk, Defendant's conduct was a cause of Plaintiff's harm, and Plaintiff was within the class of persons and his injury was within the general type of potential incidents and injuries that made Defendant's conduct negligent.

30.

The railcar was in an unreasonably dangerous condition when it left the ACF factory, and at the time of use on February 18, 2019, in that:

    a.    It lacked adequate pressure gauges on top of the railcar that would alert a worker filling the railcar with product such as diatomaceous earth that the railcar was dangerously over-pressurized and that such pressure could injure or kill the worker if the worker attempted to remove the fill line or vent line without first safely releasing the pressure within the railcar.

    b.    It lacked a design that would require a hose safety restraint such as a whip check cable or other safety device connecting the railcar hatch to fill lines and vent lines that would foreseeably be used to fill the car with product such as diatomaceous earth. Such safety restraints would prevent a worker from being injured or killed if the fill line or vent line blew off while the railcar was over-pressurized, by only allowing the lines to thrash around rather than to kill or severely injure a worker.

    c.    It lacked adequate warnings as alleged in paragraph 14(a) above.

**PRAYER FOR RELIEF**

Wherefore, plaintiff prays for judgment in his favor and against defendants as follows:

a. Medical costs in the approximate sum of $420,000 to date. Medical treatment is continuing, and this sum will be revised upwards.

b. A minimum life care plan in a sum that will be alleged in an Amended Complaint.

c. Lost wages and loss of earning capacity in a sum that will be alleged in an Amended Complaint.

d. Noneconomic damages in the sum of $5,000,000.

Dated this 4th day of November, 2020

s/ Gretchen Mandekor
Gretchen Mandekor, OSB# 001246
Timothy W. Grabe, OSB# 830423